# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1520

_____

| | | |
|---|---|---|
| State of Missouri ex rel. Jeremiah W. (Jay) Nixon, Attorney General, | * <br> * <br> * | |
| Plaintiff - Appellant, | * <br> * | |
| v. | * <br> * | Appeal from the United States |
| Coeur D'Alene Tribe, a federally recognized Indian Tribe; | * <br> * <br> * | District Court for the <br> Western District of Missouri. |
| Defendant - Appellee, | * <br> * | |

_____

No. 98-1554

_____

| | | |
|---|---|---|
| State of Missouri ex rel. Jeremiah W. (Jay) Nixon, Attorney General, | * <br> * <br> * | |
| Plaintiff - Appellant, | * <br> * | Appeal from the United States <br> District Court for the |
| v. | * <br> * | Eastern District of Missouri. |
| UniStar Entertainment, Inc.; Executone Information Systems, Inc.; Ernest Stensgar; David Matheson, | * <br> * <br> * <br> * | |
| Defendants - Appellees. | * | |

_____

Submitted: September 21, 1998
Filed: January 6, 1999
_____

Before LOKEN, LAY, and HANSEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

The State of Missouri filed two cases in state court seeking to enjoin the Coeur D'Alene Tribe and its contractor, UniStar Entertainment, Inc. ("UniStar"), from conducting an Internet gambling program known as the National Indian Lottery with Missouri residents. Defendants removed both cases and persuaded both district courts that the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, completely preempts state regulation of tribal gaming. In the first case, the Western District of Missouri dismissed all claims against the Tribe as barred by the doctrine of tribal immunity. In the second case, the Eastern District of Missouri transferred venue to the Western District of Missouri, denying the State's motion for an immediate preliminary injunction. The State appeals. In the first case, we reject the Tribe's contention that we lack appellate jurisdiction and conclude that the district court improperly defined the preemptive scope of the IGRA in denying the State's motion to remand. We remand that case for reconsideration of subject matter jurisdiction. We dismiss the second appeal for lack of an appealable order.

## I.  Background and Issues of Appellate Jurisdiction.

The Tribe is federally registered and resides on a reservation in Idaho. The Tribe operates its lottery on the "US Lottery" website pursuant to an IGRA compact with the State of Idaho. See generally 25 U.S.C. § 2710(d); Seminole Tribe v. Florida, 116 S. Ct. 1114, 1119-20 (1996). Computer users may electronically register to play from

their local homes or offices, establish a gambling account funded by charges to their credit cards, and begin gambling once the account is funded. The Tribe offers the lottery to residents of thirty six States who have Internet access. At oral argument, counsel for UniStar argued the US Lottery is lawful nationwide but appellees made the business decision to lower legal costs during start-up by not offering it in States with strong policies against gambling. Apparently, appellees misjudged the legal landscape in Missouri and Wisconsin, two States whose Attorneys General have commenced litigation. Appellees further explained they want to litigate the merits of these cases in a court in Idaho, no doubt because that State has approved the lottery by compact and may stand to profit from its nationwide revenues if non-consenting States like Missouri can be ignored.

The State of Missouri first sued the Tribe and UniStar in a state court in the Western District, seeking to enjoin operation of the lottery because Internet gambling is illegal in Missouri and therefore the Tribe is violating state law by offering unlawful services and falsely advertising that the lottery is legal in Missouri. See Mo. Rev. Stat. §§ 407.020, 407.100. Defendants removed to the Western District, claiming complete IGRA preemption. The State moved to remand, arguing the US Lottery is not gambling on "Indian lands" within the meaning of 25 U.S.C. § 2703(4) and therefore is not within the scope of IGRA preemption. The Tribe and UniStar moved to dismiss for failure to state a claim, arguing tribal immunity. Relying on our decision in Gaming Corporation of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996), the district court denied the motion to remand, concluding the IGRA completely preempts the field of Indian gaming regardless of whether the gaming occurs on Indian lands. The court declined to certify that issue for interlocutory appeal. It then granted the Tribe's motion to dismiss all claims against the Tribe as barred by tribal immunity but denied UniStar's motion to dismiss, leaving open the question whether tribal immunity extends to tribal agents such as UniStar.

In January 1998, the State voluntarily dismissed its claims against UniStar without prejudice under Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. The State then appealed the district court's orders refusing to remand and dismissing all claims against the Tribe as now-final orders. Seeking to block the appeal, UniStar asked the Western District to hold the voluntary dismissal of UniStar "ineffective and void." On July 2, 1998, with the State's appeal pending, the district court granted UniStar's motion, concluding the State could not voluntarily dismiss UniStar without leave of court, which the district court refused to grant. The Tribe immediately moved this court to amend its pending motion to dismiss the appeal to incorporate this latest district court ruling. We grant the motion to amend.

Meanwhile, after voluntarily dismissing UniStar in the first case, the State sued UniStar and two tribal leaders in a state court in the Eastern District, alleging the same violations of state law. Defendants removed that case to the Eastern District. The State moved to remand or, alternatively, for a preliminary injunction. Defendants countered with a motion to transfer the case to a district court in Idaho or to the Western District of Missouri. In a single order, the district court denied the State's motion to remand, transferred the case to the Western District to "preserve judicial economy," and denied the State's motion for a preliminary injunction without further comment. The State appeals that order.

This rather tangled procedural history presents us with the following questions of appellate jurisdiction. In the first case, the order dismissing all claims against the Tribe was not appealable when entered because UniStar remained in the case, and there was no Rule 54(b) determination permitting immediate appeal of the order finally dismissing the Tribe. The issue is whether the State's unilateral Rule 41(a)(1)(i) dismissal of UniStar without prejudice made the order dismissing the Tribe (and the earlier order refusing to remand) immediately appealable. There are two subparts to that issue -- whether a Rule 41(a)(1)(i) dismissal will normally have this effect, and if so, whether the district court's subsequent invalidation of the State's voluntary

-4-

dismissal divested this court of jurisdiction. In the second case, the issue is whether the district court's interlocutory order transferring the case and denying a preliminary injunction is an appealable order "refusing [an] injunction" under 28 U.S.C. § 1292(a)(1). We will address these issues of appellate jurisdiction and then consider the question of subject matter jurisdiction under IGRA.

## A. Appellate Jurisdiction in the First Case.

1. The Effect of a Voluntary Dismissal Without Prejudice. The Tribe argues that a voluntary dismissal without prejudice of a remaining defendant under Rule 41(a)(1)(i) does not render a previous order finally dismissing other defendants immediately appealable. We disagree. First, we note that this contention presumes the case has ended in the district court, yet the Tribe offers no suggestion as to when the order dismissing it *would be* appealable. In other words, the Tribe seeks the windfall of complete freedom from appellate review because the State failed to dismiss UniStar with prejudice. A less equitable position is hard to imagine.

Second, the Tribe relies primarily upon cases from other circuits holding that a voluntary dismissal of the claims pending against a defendant must be with prejudice to render final and appealable a previous order dismissing other claims *against the same defendant*. See Chappelle v. Beacon Commun. Corp., 84 F.3d 652, 654 (2d Cir. 1996); Horwitz v. Alloy Automotive Co., 957 F.2d 1431, 1435-36 (7th Cir. 1992). But see Division 241 Amalgamated Transit Union v. Suscy, 538 F.2d 1264 (7th Cir.), cert. denied, 429 U.S. 1029 (1976). These cases further the well-entrenched policy that bars a plaintiff from splitting its claims against a defendant. But this policy does not extend to requiring a plaintiff to join multiple defendants in a single lawsuit, so the policy is not violated when a plaintiff "unjoins" multiple defendants through a voluntary dismissal without prejudice. See 8 MOORE'S FEDERAL PRACTICE ¶ 41.33[8][g][i] (3d ed. 1998). Moreover, our court has never adopted the rule applied in Chappelle and Horwitz. Indeed, in Chrysler Motors Corp. v. Thomas Auto Co., 939 F.2d 538 (8th

Cir. 1991), we upheld appellate jurisdiction after the parties agreed to dismiss *without prejudice* the only claims remaining against the defendant.

In <u>Johnston v. Cartwright</u>, 344 F.2d 773, 774 (8th Cir. 1965), plaintiff appealed the dismissal of one defendant after voluntarily dismissing the remaining two defendants without prejudice by court order under Rule 41(a)(2). We held the dismissal order became final and appealable when the other defendants were voluntarily dismissed from the lawsuit. The Tribe's contention that <u>Johnston</u> should not apply equally to voluntary dismissals as of right under Rule 41(a)(1)(i) is unpersuasive. Either type of voluntary dismissal leaves the action in the same posture as if suit had never been brought against the dismissed defendant.[1]

<u>2. Did the District Court's Order Invalidate the State's Voluntary Dismissal?</u>
Having concluded a Rule 41(a)(1)(i) dismissal normally makes a prior interlocutory dismissal order final and appealable, we must determine whether the district court's order properly invalidated the State's voluntary dismissal. A voluntary dismissal under Rule 41(a)(1)(i) must be filed "before service by the adverse party of an answer or of a motion for summary judgment." Here, UniStar's Rule 12(b)(6) motion papers included matters outside the State's pleading, namely, copies of the Tribal Code and US Lottery Internet pages stating tribal sovereign immunity was not waived. Long after it ruled on the motion, the district court concluded this automatically converted the motion to one for summary judgment, and it declared the State's voluntary dismissal untimely and invalid. The Tribe argues we have no jurisdiction because the State's claims against UniStar are therefore still pending.

---

[1]The Tribe also argues the appeal was untimely because it was not filed within 30 days of the order dismissing the Tribe. This contention is without merit. The State filed its notice of appeal two days after voluntarily dismissing UniStar, the event that made the prior order final and appealable. <u>See</u> <u>Hicks v. NLO, Inc.</u>, 825 F.2d 118, 120 (6th Cir. 1987).

The problem with this contention is that the district court took its action after the State filed its notice of appeal. Once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); Liddell v. Board of Educ., 73 F.3d 819, 822 (8th Cir. 1996). For example, while an appeal is pending, the district court may not reexamine or supplement the order being appealed. See 20 MOORE'S FEDERAL PRACTICE § 303.32[2][a][ii] & n.15. This jurisdictional principle is not absolute. To prevent parties from using frivolous appeals to delay or interrupt proceedings in the district court, that court does not normally lose jurisdiction to proceed with the case when one party appeals a non-appealable order. Id. at § 303.32[2][b][iv][B] & cases cited. However, appellate jurisdiction is primarily an issue for the appellate court. Therefore, if an appeal is taken from an interlocutory order and the issue of appealability is in doubt, the district court should stay its hand until we resolve the issue of our jurisdiction, or remand for further clarification of that issue. See Johnson v. Hay, 931 F.2d 456, 459 n.2 (8th Cir. 1991).

In this case, the district court did not treat the Rule 12(b)(6) motions as motions for summary judgment nor give both parties the opportunity to present additional summary judgment materials, as Rule 12(b) requires. On appeal, no party suggests the district court improperly relied upon disputed factual matters outside the pleadings in granting the Tribe's motion to dismiss -- the State challenges the ruling on the merits, and the Tribe simply wants to recast the ruling so as to deprive us of jurisdiction.[2] In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion. See Martin v. Sargent, 780 F.2d 1334, 1336-37 (8th Cir.

[2]On this basis we distinguish cases in which the principal issue on appeal was whether the district court erred in not converting a Rule 12(b)(6) motion and giving the losing party a reasonable opportunity to develop an adequate summary judgment record. See, e.g., Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992); Woods v. Dugan, 660 F.2d 379, 380 (8th Cir. 1981).

1985). Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss. See Papsan v. Allain, 478 U.S. 265, 268 n.1 (1986); Hollis v. United States Dep't of Army, 856 F.2d 1541, 1543-44 (D.C. Cir. 1988). Thus, when filed, the State's Rule 41(a)(1)(i) voluntary dismissal of UniStar was facially valid.

The State's facially valid voluntary dismissal of UniStar gave this court apparent jurisdiction over the State's appeal from the prior orders dismissing the Tribe and refusing to remand. The question of appellate jurisdiction is fundamental to an appeal.[3] If the Tribe or UniStar wished to challenge the validity of the Rule 41(a)(1)(i) voluntary dismissal, they should have come to this court, not the district court, asking us to dismiss the appeal, or to remand if they believed that clarification from the district court would be helpful. Therefore, the district court's July 1998 order purporting to recast its prior dismissal order so as to divest this court of appellate jurisdiction was beyond the district court's jurisdiction and is void. The Tribe asserts no other basis for its challenge to our jurisdiction, and the State's voluntary dismissal is facially valid. Therefore, the Tribe's motion and amended motion to dismiss the State's appeal in the first case are denied.

### B. Appellate Jurisdiction in the Second Case.

Defendants argue we have no jurisdiction over the second appeal because the district court did not rule on the merits of the State's preliminary injunction motion but simply transferred venue in the case to the Western District. We agree. The merits of the State's request for a preliminary injunction were not addressed at the motion

---

[3]On the other hand, we have held that a district court retains jurisdiction over collateral matters, such as attorney's fees or sanctions, while an appeal is pending. See Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998); Harmon v. United States, 101 F.3d 574, 587 (8th Cir. 1996).

hearing. Several times during that hearing, the court advised the State it could raise the preliminary injunction issue after transfer to the Western District. At the end of the hearing, the court explained, "the transfer is really the basis of everything." Although the court's written order recited that the State's request for a preliminary injunction was denied, it contained no findings of fact and conclusions of law supporting the denial of an injunction, as Rule 52 requires. We conclude the court intended simply to transfer a pending injunction motion, not to deny an injunction on the merits. Therefore, its transfer order is not appealable under 28 U.S.C. § 1292(a)(1). See Liddell v. Board of Educ., 105 F.3d 1208, 1212 (8th Cir. 1997); Rodgers v. United States Steel Corp., 541 F.2d 365, 372 (3d Cir. 1976). It is well-settled that an interlocutory order transferring venue is not otherwise appealable. See United States Fire Ins. Co. v. American Family Life Assur. Co., 787 F.2d 438 (8th Cir. 1986).

## II. Subject Matter Jurisdiction and the IGRA.

The State argues the district court lacks subject matter jurisdiction and therefore erred in denying the State's motion to remand. A case may be removed only if it could be brought in federal court originally. See 28 U.S.C. § 1441(a). "Absent diversity of citizenship . . . federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Normally, the presence of a federal defense such as IGRA preemption will not support removal, even if the federal defense is the only contested issue in the case. However, when a federal statute has "preempt[ed] a field of law so completely that state law claims are considered to be converted into federal causes of action," then an action purporting to plead preempted state law claims is removable. Dorsey, 88 F.3d at 543. The question here, as in Dorsey, is whether the IGRA has this "extraordinary preemptive power" to completely preempt the state law claims at issue. We review these jurisdictional issues de novo. See United States v. Thunder Hawk, 127 F.3d 705, 706 (8th Cir. 1997).

In Dorsey, casino management companies sued a Twin Cities law firm, asserting state law claims such as fraud and breach of fiduciary duty arising out of the parties' conduct during the licensing of a tribal casino on Indian lands in Wisconsin. The law firm removed, claiming complete IGRA preemption. The district court remanded the entire case to state court, and we reversed. After reviewing the IGRA's language and legislative history under the Supreme Court's complete preemption precedents, we concluded that Congress had completely preempted the field of regulating gaming activities on Indian lands. See 88 F.3d at 542-48. We then examined the specific state law claims at issue to see whether they fell within the preemptive scope of the IGRA. We concluded that at least some of the claims were preempted because they potentially interfered with the Tribe's casino licensing process, a process mandated and regulated by the IGRA. The district court had erred in remanding those preempted claims.

In this case, the district court denied the State's motion to remand without deciding whether the Tribe's internet lottery is conducted "on Indian lands." The court gave two reasons for this decision -- because the Indian lands issue is a question of federal law "warranting federal jurisdiction," and because the court construed our opinion in Dorsey as extending IGRA complete preemption to include all claims which may interfere with tribal governance of gaming. We disagree.

As our opinion in Dorsey explained at length, the IGRA established a comprehensive regulatory regime for tribal gaming activities on Indian lands. Both the language of the statute and its legislative history refer only to gaming on Indian lands. See, e.g., 25 U.S.C. § 2701; S. Rep. No. 100-446, reprinted in 1988 U.S.C.C.A.N. 3071, 3071-3083. The Indians' long-standing rights and interests in controlling activities on their tribal lands, and the States' correspondingly limited power to regulate activities on tribal lands except as authorized by Congress, are core principles underlying the IGRA that necessarily frame the scope of its preemptive force. See generally California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987) (the Supreme Court decision to which Congress responded in IGRA). Our conclusion in

Dorsey that the IGRA preempted claims interfering with tribal gaming must be viewed in the context of an IGRA-regulated licensing of casino gaming that was indisputably conducted solely on Indian lands. In our view, the district court's reasoning simply proves too much. Once a tribe leaves its own lands and conducts gambling activities on state lands, nothing in the IGRA suggests that Congress intended to preempt the State's historic right to regulate this controversial class of economic activities. For example, if the State of Missouri sought an injunction against the Tribe conducting an internet lottery from a Kansas City hotel room, or a floating crap game in the streets of St. Louis, the IGRA should not completely preempt such a law enforcement action simply because the injunction might "interfere with tribal governance of gaming."

Placed in proper perspective, we think the issue whether the Tribe's lottery is conducted "on Indian lands" is critical to whether the State's claims fall within the preemptive force of the IGRA, which in turn determines whether the district court has subject matter jurisdiction over the removed action. The on-Indian-lands question is one of federal law, but its *unresolved* presence is not enough to confer federal subject matter jurisdiction over the entire case. If the Tribe's lottery is being conducted on its lands, then the IGRA completely preempts the State's attempt to regulate or prohibit. See 25 U.S.C. § 2710(d)(1). But if the lottery is being conducted on Missouri lands, the IGRA does not preempt the state law claims -- indeed, it does not even appear to provide a federal defense -- and the case must be remanded to state court.[4]

---

[4]The Tribe's contention that the district court has jurisdiction under the "artful pleading" exception to the well-pleaded complaint rule is without merit. Under this exception, federal courts have subject matter jurisdiction over purported state law claims if the plaintiff failed to plead a federal right or immunity that is an essential element of the plaintiff's cause of action. However, the State's claims against the Tribe arise solely from state law. The federal question at issue involves the federal defense of IGRA preemption. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10-12 (1983).

Accordingly, in case No. 98-1520, the district court's orders of September 29, 1997, and November 19, 1997, are vacated, and the case is remanded to the Western District of Missouri for further proceedings not inconsistent with this opinion. On remand, the court must initially determine whether the Tribe's internet lottery is a gaming activity on Indian lands of the Tribe. See 25 U.S.C. §§ 2702(3), 2710(d). If the court concludes the lottery is not conducted on Indian lands when a participant plays from a computer located in Missouri, it must grant the State's motion to remand, and the issue of tribal sovereignty will be decided in the first instance by the state courts.[5]

In case No. 98-1554, we dismiss the appeal for lack of jurisdiction. The State's motion to strike a portion of the defendants' brief and the defendants' motions to file a supplemental appendix and to supplement the record on appeal are denied as moot.

---

[5]See AT&T Corp. v. Coeur d'Alene Tribe, No. CV97-392-N-EJL (D. Idaho Dec. 17, 1998) (IGRA preemption limited to gaming on Indian lands; the Tribe's lottery is not on Indian lands when the wager is placed by telephone from off the reservation). We further note that in the criminal statute prohibiting interstate wagering by wire, Congress's limited exemption for lawful gambling requires that the betting be legal in the State from which the bettor places a call. See 18 U.S.C. § 1084(b). Proposed legislation to expand this statute to include internet gambling has a similarly limited exemption. See Internet Gambling Prohibition Act, S. 474 and H.R. 2380, § 3(b)(1), 105th Cong. (1997). We also note that Congress in enacting the IGRA recognized that States have "significant governmental interests" in Indian gaming, including "the State's public policy, safety, law and other interests [such as] raising revenue for its citizens." S. Rep. No. 100-446, reprinted in 1988 U.S.C.C.A.N. at 3083. For a review of the checkered legal history of lotteries in Missouri and elsewhere, see Tichenor v. Missouri State Lottery Comm'n, 742 S.W.2d 170, 179-81 (Mo. banc 1988) (Welliver, J., dissenting).

LAY, Circuit Judge, concurring in part and dissenting in part.

I would hold that this court lacks appellate jurisdiction in both of these cases. I do so on the ground that there exists no final order in either case. The majority finds that a final order exists and concludes that the district court erroneously defined the preemptive scope of IGRA in denying the state's motion to remand. I respectfully submit that this case is extremely important in this circuit because of the failure to follow the rule of finality which governs appeals in federal courts.

In the district court, in the first appeal, the Tribe and Unistar moved to dismiss for failure to state a claim on the grounds of tribal immunity. The State of Missouri moved to remand. The district court denied the motion to remand concluding IRGA provided complete preemption in the field of Indian gaming regardless of whether the gaming occurs on Indian land. The district court refused to certify that issue for interlocutory appeal. The district court then granted the Tribe's motion to dismiss all claims against the Tribe as barred by trial immunity but denied Unistar's motion to dismiss. In January, 1998, the state then voluntarily dismissed all of its claims against Unistar without prejudice under Fed. R. Civ. P. 41(a)(1)(i).[6] The state then appealed. Thereafter, on July 2, 1998, notwithstanding the state's pending appeal, the district court concluded that the state could not voluntarily dismiss Unistar without leave of

---

[1]Rule 41(a)(1)(i) reads in relevant part as follows:

> an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs. . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice. . . .

Fed. R. Civ. P. 41(a)(1)(i).

court.  The Tribe then moved in this court to amend its pending motion to dismiss this appeal to incorporate the district court's ruling.

As the majority points out, after the state voluntarily dismissed Unistar in the first case, it sued Unistar and two Tribal leaders in a state court in the Eastern District of Missouri alleging the same violations of state law.  This case was then removed to the Eastern District of Missouri.  The district court transferred this case to the Western District of Missouri and denied the state's motion to remand.  The state has now appealed that order.  I concur with the majority that we lack appellate jurisdiction to review that case.

In the first case, notwithstanding the fact there was no Federal Rule of Civil Procedure Rule 54(b) determination permitting immediate appeal of the order dismissing the Tribe, this court now finds the state's unilateral dismissal of Unistar without prejudice made the order dismissing the Tribe immediately appealable.

In finding that we have appellate jurisdiction over the state's appeal, the court creates an anomalous rule under the facts of this case.  First, the majority is concerned that if the Tribe's dismissal is not immediately appealable, it will create a "windfall of complete freedom from appellate review."  The majority urges "[a] less equitable position is hard to imagine."  This reasoning is a complete non sequitur.  The situation with which we deal is no different than any other interlocutory ruling where all orders must wait until there is a final judgment as to all parties and all claims.  In cases where certification is denied under Rule 54(b), the mere fact that one or more parties is not affected by a dismissal of a co-defendant  does not immunize the case from appellate review.  This case is no different.

The primary issue that we face is whether Unistar's motion to dismiss on the ground of tribal immunity constituted a motion for summary judgment.  If it did, it should be clear that a voluntary dismissal of Unistar could not be effected under Rule

-14-

41(a)(1)(i) without dismissing these claims with prejudice under such terms and conditions as the court deems proper. The majority opinion deals at length with the fact that the district court was without jurisdiction to hold that Unistar's 12(b)(6) motion papers constituted summary judgment. The majority faults the district court for lack of jurisdiction in so ruling after the state had filed its notice of appeal. On this basis, the majority finds the state's Rule 41(a)(1)(i) voluntary dismissal of Unistar was facially valid.

I see the belated order of the district court as being a non-issue in this case. Assuming that the district court had no jurisdiction to act, the fundamental issue of whether the appeal by the state is a final order is an issue for this court, and whatever the district court ruled is immaterial to deciding our own appellate jurisdiction. This court must independently determine whether there is a final order to support our jurisdiction and such determination must be made whether the parties raised the issue or not. In the present case, it is clear that Unistar's 12(b)(6) motion included matters outside the state's pleadings. A true test of whether a motion to dismiss involves matters outside the pleadings so as to convert the motion into a summary judgment is whether or not extrinsic facts are introduced into the record.[7]

In the present case, the majority holds that the district court did not treat the 12(b)(6) motion as a motion for summary judgment. Yet, the record contains Judge Sachs' statement (albeit belated) that he did consider excerpts attached to Unistar's motion from the Coeur D'Alene Tribal Code as well as excerpts from the rules and regulations of the U.S. Lottery. These exhibits contain factual information outside the

---

[2]Judge Loken relies on <u>Martin v. Sargent</u>, 780 F.2d 1334, 1336-37 (8th Cir. 1985), to support his theory that simply because additional materials are filed in support or opposition to the motion, this does not automatically convert the motion to one for summary judgment. This case is clearly distinguishable. In <u>Martin</u> the parties did not even bother to file the additional evidence with its motion. The other cases cited by Judge Loken are not relevant to the issue involved.

pleadings. Although Judge Sachs' order in July is not relevant to our decision, it is difficult to ignore an experienced judges averment that he did consider these extrinsic facts when passing on the motion to dismiss.

Rules of finality governing orders on appeal are essential to the judicial efficiency of appellate jurisdiction. Rule 41(a)(1)(i) is designed to allow voluntary dismissals where the trial proceedings have not progressed to a stage where a defendant has answered or filed a motion for summary judgment. Obvious reasons of judicial efficiency support this rule. However, in addition, the rule serves to avoid multiplicity of lawsuits against a defendant. Here, the state's obvious strategy was to obviate the final judgment rule by filing a voluntary dismissal and then refiling against the dismissed party the next day. If the majority's rule becomes precedent, we simply invite a means to circumvent established rules governing review of final orders.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.